UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.               Case No. 22-cr-0176-bhl-1

NYGIL A. MCDANIEL,

    Defendant.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNTS ONE, TWO, AND FOUR AS UNCONSTITUTIONAL**

    In late August 2020, Kenosha County declared a state of emergency and implemented a curfew in response to the violent protests and property destruction that erupted in the wake of the police shooting of Jacob Blake. (ECF No. 38 at 2.) On August 26, 2020, at around 8:30 p.m., while the curfew was in effect, police officers noticed two men carrying weapons and walking in the direction of the protesters. (*Id*.) As the officers approached, Defendant Nygil McDaniel placed an AK-style pistol on the ground. (*Id*.) The officers searched McDaniel and discovered a loaded Glock pistol in his backpack. (*Id*.) McDaniel was also carrying several loaded magazines for the two pistols and a clear plastic bag with about half an ounce of suspected marijuana. (*Id*.) McDaniel was arrested for carrying a concealed weapon without a permit, marijuana possession, and violating the curfew. (*Id*.) During a custodial interview, McDaniel admitted that the marijuana belonged to him and that he "recreationally smoke[s] weed," "[n]ot every day, but just about." (*Id*. at 3.) McDaniel had purchased the Glock pistol from a federal firearms licensee a few months earlier. (*Id*.) On the ATF "Firearms Transaction Record," Form 4473, McDaniel answered that he was not an unlawful user of marijuana or any other controlled substance. (*Id*.)

    On September 13, 2022, the grand jury returned a six-count indictment charging McDaniel and a codefendant with multiple firearms offenses. (ECF No. 1.) McDaniel is charged in Counts One, Two, Four, and Six of the indictment. (*Id*.) Counts One and Four charge him with knowingly making a false statement to a federally licensed firearms dealer in connection with his acquisitions of firearms (in April 2020 and March 2022) in violation of 18 U.S.C. § 922(a)(6). Count Two

charges McDaniel with possession of a firearm while knowing he was an "unlawful user" of a controlled substance (marijuana) in violation of 18 U.S.C. § 922(g)(3). Count Six charges McDaniel with receiving a firearm while charged with a felony in violation of 18 U.S.C. § 922(n).

McDaniel has filed four separate motions to dismiss. (ECF Nos. 31–34.) This Order addresses one of those motions, a motion to dismiss Counts One, Two, and Four on Second Amendment grounds. (ECF No. 32.) In that motion, McDaniel argues that these three counts must be dismissed based on the U.S. Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen,* 597 U.S. 1 (2022). More specifically, McDaniel contends that prohibiting an "unlawful user" of marijuana from possessing a firearm (Count Two) does not align with the Nation's historical tradition of firearms regulation and is therefore unconstitutional.[1] (ECF No. 32 at 1.) McDaniel also contends that Counts One and Four, charging him with falsely claiming he was not an unlawful user of marijuana on a firearm transaction form, must also be dismissed due to Section 922(g)(3)'s "constitutional infirmity, which renders any alleged statement on the issue immaterial." (*Id.* at 2.)

On April 28, 2023, Magistrate Judge Stephen C. Dries issued a report recommending that McDaniel's motion be denied. (ECF No. 48.) Judge Dries rejected the government's contention that McDaniel could not invoke the Second Amendment because he was not a "law-abiding" or "responsible" citizen, concluding that the law was unclear on this point and, in any event, the issue needed to be adjudicated at trial. (*Id.* at 5–7 (quoting *United States v. Rahimi*, 61 F.4th 443, 452 (5th Cir. 2023).) Judge Dries then turned to the constitutionality of Section 922(g)(3) and, relying on the Seventh Circuit's pre-*Bruen* decision in *United States v. Yancey*, 621 F.3d 681 (7th Cir. 2010), concluded that Section 922(g)(3) survived constitutional muster because it was "relevantly similar" to longstanding prohibitions disarming felons and the mentally ill. (*Id.* at 12–14 ("*Yancey*'s historical analysis demonstrates that § 922(g)(3) is relevantly similar to historical firearm regulations concerning felons and the mentally ill.").) Based on this conclusion, Judge Dries also rejected McDaniel's challenge to the false statement charges, a challenge that was premised entirely on the alleged unconstitutionality of the underlying Section 922(g)(3) charge. (*Id.* at 16.)

---

[1] McDaniel asserts that the statute is "facially unconstitutional." (ECF No. 43 at 35.) "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

On June 1, 2023, McDaniel filed objections to the Report. (ECF No. 60.) McDaniel argues that *Bruen* created two separate tests for evaluating whether a firearm regulation is constitutional. (*Id.* at 2–3.) Where a challenged statute addresses a general societal problem that has persisted since the 18th century, he insists, the government must provide examples of "distinctly similar" historical regulation. (*Id.* at 2 (quoting *Bruen*, 597 U.S. at 26).) But where a modern statute reflects "unprecedented societal concerns or dramatic technological changes," McDaniel contends, the government must show a relevantly similar historical analogue. (*Id.* (quoting *Bruen*, 597 U.S. at 29).) Based on this dichotomy, McDaniel objects to Judge Dries's use of the "relevantly similar" standard as being inapplicable and insufficiently stringent. (*Id.* at 3–4.) McDaniel insists the magistrate judge should have applied the more exacting "distinctly similar" standard, which, he contends, Section 922(g)(3) does not satisfy. (*Id.* at 4–5.) McDaniel further argues the government failed to carry its burden under either test, and, therefore, the prohibition is unconstitutional under *Bruen*. (*Id.* at 10–14.)

On June 20, 2023, while the parties were briefing McDaniel's objections, the Seventh Circuit remanded without deciding a similar appeal concerning a Second Amendment challenge to a federal firearms charge. In *Atkinson v. Garland*, 70 F.4th 1018 (7th Cir. 2023), the Seventh Circuit declined to resolve the Second Amendment's applicability to Section 922(g)(1), which prohibits a felon from possessing a firearm, and instead remanded the case to the district court with instructions to engage in a more fulsome analysis of the issue. *Atkinson*, 70 F.4th at 1022. Given the Seventh Circuit's commentary in *Atkinson*, this Court ordered the parties to submit supplemental briefing addressing the Seventh Circuit's statements. (ECF No. 71.) That briefing is now concluded and, for the reasons stated below, the Court overrules the objections to the Report and Recommendation and adopts Judge Dries's conclusion that 18 U.S.C. § 922(g)(3) is constitutional. McDaniel's motion to dismiss, (ECF No. 32), is therefore denied.

## STANDARD OF REVIEW

A district court reviews *de novo* "those portions of [a magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3). This "review requires the district [court] judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The district court "makes the ultimate decision to adopt, reject, or

modify" the magistrate judge's recommendation. *Schur v. L.A. Weight Loss Ctrs.*, 577 F.3d 752, 760 (7th Cir. 2009). Unchallenged portions of the report are reviewed only for clear error. *See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) (citing *Goffman v. Gross,* 59 F.3d 668, 671 (7th Cir. 1995)).

## ANALYSIS

I.  **The Second Amendment Limits the Government's Ability to Regulate an Individual's Right to Bear Arms.**

The Second Amendment provides that: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. This fundamental part of the Bill of Rights received little attention for more than 200 years. As firearms regulations have increased, challenges under the Second Amendment have proliferated. In response, over the last two decades, the Supreme Court has decided a trilogy of cases addressing and clarifying the scope of the Second Amendment's protections: *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010); and *Bruen*. Through these precedents, the Supreme Court has confirmed that the right to keep and bear arms is not a vacuous platitude; it places real limits on government efforts to restrict an individual's possession of a firearm. The Supreme Court has simultaneously emphasized that the right to keep and bear arms is not without limitation and not all government regulations of firearm possession necessarily offend the Constitution.

In *Heller*, the Supreme Court confirmed that the "core" of the Second Amendment is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home" and struck down a District of Columbia law that, among other things, banned handgun possession in the privacy of an individual's home. 554 U.S. at 630, 635. Two years later, in *McDonald*, the Supreme Court confirmed that the right to keep and bear arms for self-defense is among the individual federal rights protected from state interference under the Due Process Clause of the Fourteenth Amendment. 561 U.S. at 791. *McDonald* held that the right recognized in *Heller* was "among those fundamental rights necessary to our system of ordered liberty" and thus applicable to the states through the Fourteenth Amendment. *Id*. at 778.

In 2022, the Supreme Court decided *Bruen* and confirmed that the Second Amendment "protect[s] the right of an ordinary, law-abiding citizen . . . to carry a handgun for self-defense outside the home." 597 U.S. at 8–10. The Supreme Court held New York's proper cause requirement for obtaining a concealed carry license unconstitutional because it prevented law-

abiding citizens who have ordinary self-defense needs from exercising their Second Amendment right to keep and bear arms. *Id.* at 70–71. In arriving at this result, the Supreme Court rejected what it termed the "two-step approach" that several Courts of Appeals, including the Seventh Circuit, had adopted to evaluate firearm regulations, calling it "one step too many." *Id.* at 19. The Supreme Court clarified that "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." *Id.* Instead, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 17. Thus, "[o]nly if a firearm regulation is consistent with this Nation's historical tradition [of firearm regulation] may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961); *see also id.* at 22–24 (rejecting means-end scrutiny and reiterating the standard for applying the Second Amendment). This inquiry "involve[s] reasoning by analogy" and a determining if the law at issue is "relevantly similar" to historically accepted regulations. *Id.* at 28–29 (partially quoting C. Sunstein, On Analogical Reasoning, 106 Harv. L. Rev. 741, 773 (1993)). The central considerations are "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 29.

## II. McDaniel's Facial Challenge to Section 922(g)(3) Fails.

McDaniel claims that his indictment for violating Section 922(g)(3) must be dismissed because the statute infringes upon his Second Amendment rights. Section 922(g) makes it "unlawful for any person … (3) who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)); to . . . possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." The government contends that McDaniel's Second Amendment challenge fails because the right to bear arms is limited to law-abiding, responsible citizens and McDaniel, as an admitted habitual marijuana user—a controlled substance that is illegal both federally and in Wisconsin—falls outside the scope of the amendment's protections.[2] (ECF No. 64 at 3.) The government also contends that Section

---

[2] Federal law defines who is an unlawful user of a controlled substance. *See* 18 U.S.C. § 922(g)(3). An individual is an unlawful user of a controlled substance under Section 922(g)(3) if he or she is engaged in the regular and ongoing use of a drug at the time of the firearm possession. *United States v. Cook*, 970 F.3d 866, 878–79 (7th Cir. 2020). McDaniel admitted as much when he was interviewed by ATF agents in August of 2020. (ECF No. 38 at 2–3.)

922(g)(3) aligns with historical firearms regulations restricting felons, the mentally ill, and intoxicated individuals from possessing firearms. (ECF No. 64 at 6–8.)

### A. The Second Amendment Protects the Rights of Law-Abiding Citizens.

In all three of its recent trilogy of Second Amendment cases, the Supreme Court has emphasized that the Second Amendment protects the rights of law-abiding citizens to keep and bear arms and that its rulings should not be interpreted to cast doubt on well-established restrictions on firearm possession by those adjudicated to be dangerous, like "felons and the mentally ill." *See McDonald*, 561 U.S. at 786 (quoting *Heller*, 554 U.S. at 626–27). Most recently, in *Bruen*, the majority emphasized that "the Second and Fourteenth Amendments protect the right of an ordinary, *law-abiding citizen* to possess a handgun . . . for self-defense." 597 U.S. at 8–9 (emphasis added). It characterized the *Bruen* petitioners as "two ordinary, *law-abiding*, adult citizens," who were "part of 'the people' whom the Second Amendment protects." *Id.* at 31–32 (emphasis added) (quoting *Heller*, 554 U.S. at 580). Making sure its analysis could not be misunderstood, the majority used the specific phrase "law-abiding" citizens no less than *fourteen times* in describing the holders of Second Amendment rights. *Id.* at 9, 15, 26, 29–31, 33 n.8, 38, 38 n.9, 60, 70–71.

Since *Bruen*, the Seventh Circuit has twice rejected challenges by defendants who claimed their indictments violated the Second Amendment. *See United States v. Holden*, 70 F.4th 1015 (7th Cir. 2023); *United States v. Gay*, 98 F.4th 843 (7th Cir. 2024). *Holden* involved a defendant who had pleaded guilty to making a false statement to a federal firearms dealer in violation of 18 U.S.C. § 922(a)(6) after he falsely answered that he was not "under indictment or information" for a felony when he purchased a firearm. 70 F.4th at 1016. The defendant convinced the district court that he should be allowed to withdraw his plea and then obtained dismissal of the indictment entirely, arguing that the government could not prohibit someone merely under indictment for a felony from possessing a firearm under *Bruen*. *Id.* The Seventh Circuit disagreed, reversing the dismissal and reinstating the charges. In doing so, the Court of Appeals emphasized that the defendant had been charged with lying about being under indictment under Section 922(a)(6), not possession of a gun while under indictment, a separate offense under Section 922(n). *Id.* at 1017. The Court of Appeals confirmed that while some persons under felony indictment might be able to challenge their prosecution under Section 922(n) as violative of the Second Amendment on an "as applied" basis, this possibility did not license them to lie in connection with their purchase of firearms. *Id.* Without adjudicating whether any particular felony indictment might be inconsistent

with barring possession of a firearm, the Seventh Circuit confirmed that the government was entitled to "keep firearms out of the hands of dangerous people who are apt to misuse them," and noted that "the very act of lying to obtain a firearm implies a risk that the weapon will be misused." *Id*. at 1017, 1018.

The Seventh Circuit was similarly skeptical of a Second Amendment challenge to a federal criminal indictment in *Gay*. In *Gay*, the defendant argued for dismissal of felon in possession charges under 18 U.S.C. § 922(g)(1), claiming that the Second Amendment prohibits Congress from banning possession of firearms or ammunition by persons with felony convictions. 98 F.4th at 846. The Seventh Circuit had little trouble rejecting this argument, noting that Gay's argument was "hard to square" with *Heller*'s statement that "'longstanding prohibitions on the possession of firearms by felons' are valid." *Id*. The Seventh Circuit also noted that *Bruen* "repeatedly used the phrase 'law-abiding, responsible citizens' or a variant" to "describ[e] the persons who possess rights under the Second Amendment." *Id.* The Court accordingly held that Gay, who had been convicted of 22 felonies, "d[id] not fit that description." *Id.* at 846–47. The Court also explained that even "assum[ing] for the sake of argument that there is *some* room for as-applied challenges" to Section 922(g)(1), that assumption did not assist the defendant, whose 22 felony convictions placed him well outside any such challenge. *Id.* (emphasis in original).

Relying upon these principles, the government argues McDaniel's motion must be denied. The government contends that because he is an admitted habitual marijuana user and thus not a law-abiding citizen, the Second Amendment does not protect his possession of a firearm. (ECF No. 64 at 3.) The Court agrees. The Supreme Court explicitly and repeatedly recognized that the history of Second Amendment establishes that its protections do not extend to those who, as McDaniel is alleged to have done, violate the law and act irresponsibly. This alone would be a basis to deny McDaniel's motion to dismiss. *See United States v. Seiwert*, No. 20 CR 443, 2022 WL 4534605, at *2 (N.D. Ill. Sept. 28, 2022) (concluding that unlawful users of controlled substances fall outside the Second Amendment's protections); *Gay*, 98 F.4th at 846 (noting that *Bruen* "repeatedly used the phrase 'law-abiding, responsible citizens' or a variant" to "describe[e] the persons who possess rights under the Second Amendment").

This result is supported by the Seventh Circuit's ruling in *Gay*. The Court of Appeals held that Section 922(g) was constitutional, at least as applied to a defendant with 22 prior felony convictions. *Id.* at 846–47. In rejecting Gay's constitutional claim, the panel in *Gay* reviewed the

Supreme Court's relevant statements in *Heller*, *McDonald*, and *Bruen* and noted that the Supreme Court "pointedly stated that 'longstanding prohibitions on the possession of firearms by felons' are valid." *Id.* at 846 (quoting *Heller*, 554 U.S. at 626, 635). The Seventh Circuit advised that, "[o]ne must not read decisions of the Supreme Court as if they were statutes." *Id*. While there was "*some* room for as applied challenges" to Section 922(g) "for the sake of argument," there was no problem applying the statute to Gay given his extensive criminal record. *Id.* (emphasis in original). The Seventh Circuit noted Gay engaged in criminal activity while on parole by fleeing the police by car and on foot and determined that, "[n]o, Gay is not a 'law-abiding, responsible' person who has a constitutional right to possess a firearm." *Id.* at 847.

In sum, McDaniel is like the defendant in *Gay*, who "violated the law in secret and tried to avoid detection." *Id.* McDaniel is alleged to have lied on the ATF form that he was not a user of controlled substances, knowing that he was actually a habitual user of marijuana, a controlled substance, in violation of federal and Wisconsin law. *See* 21 U.S.C. § 844(a); Wis. Stat. § 961.41(3g)(e). If these facts are true, McDaniel, like the defendant in *Gay* is not among the "law-abiding, responsible citizens" who enjoy constitutional rights to possess firearms for self-defense.

### B. Section 922(g)(3) Is Also Analogous to Prohibitions on Felons, the Mentally Ill, and Intoxicated Individuals from Possessing Firearms.

McDaniel's Second Amendment challenge fails for a second, related reason. Contrary to McDaniel's argument, the prohibition on illegal drug users from possessing weapons is consistent with the long-held understanding of the scope of the right to bear arms. McDaniel disagrees, invoking language in the *Bruen* majority opinion to argue that his indictment must be dismissed because the government has not shown a "'distinctly similar' historical firearm regulation" to Section 922(g)(3). (ECF No. 60 at 2–3 (quoting *Bruen*, 597 U.S. at 26).) He spins a theory in which *Bruen* established two different standards for analyzing firearms regulations. Because "[d]rug users' access to firearms is neither new nor unforeseeable," McDaniel insists the government must satisfy the more exacting "distinctly similar" standard. (*Id*. at 3-4.) This argument rests on a misreading of *Bruen*.

As Judge Dries explained, the Supreme Court did not create two separate standards and tests under the Second Amendment. Rather, "the lack of a distinctly similar historical regulation addressing a longstanding societal problem is merely '*relevant evidence* that the challenged regulation is inconsistent with the Second Amendment' not that it is dispositive of the issue." (*See*

ECF No. 48 at 10 (quoting *Bruen*, 57 U.S. at 26).) Although *Bruen* contemplated both "fairly straightforward" and "more nuanced" historical inquiries, the Supreme Court did not establish different evidentiary burdens or tests. *See Bruen*, 597 U.S. at 26–27. *Bruen* explained that a regulation passes Second Amendment muster when it is "relevantly similar" to "historical analogues." *See NRA v. Bondi*, 61 F.4th 1317, 1325 (11th Cir. 2023); *Rahimi*, 61 F.4th at 454 ("The core question is whether the challenged law and proffered analogue are 'relevantly similar.'") (quoting *Bruen*, 597 U.S. at 28–29); *United States v. Alaniz*, 69 F.4th 1124, 1129–30 (9th Cir. 2023) (rejecting defendant's argument that the government must "present a 'distinctly similar' historical analogue") (quoting *Bruen*, 597 U.S. at 26).

In the end, the question is how close the historical analogue must be to satisfy *Bruen*'s requirement that a present-day prohibition on gun possession sufficiently resembles regulations at or reasonably near the time the Second Amendment was ratified. The statute in question, 18 U.S.C. § 922, the Federal Gun Control Act, was enacted as part of the Omnibus Crime Control and Safe Streets Act of 1968 to strengthen federal controls over firearms in interstate and foreign commerce. One of the Act's purposes was to keep firearms out of the hands of persons whose possession of firearms Congress deemed "contrary to the public interest." *Huddleston v. United States*, 415 U.S. 814, 824 (1974). As enacted in 1968, the Act prohibits any person who is an unlawful user of or addicted to any controlled substance (as defined by statute) to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. 18 U.S.C. § 922(g)(3).

The parties spend much of their briefing addressing two pre-*Bruen* decisions from the Seventh Circuit: *Yancey* and *United States v. Meza-Rodriguez*, 798 F.3d 664 (7th Cir. 2015). *Yancey*, decided in 2010, held Section 922(g)(3) constitutional as applied to a convicted drug dealer, explaining that "most scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'" 621 F.3d at 684–85 (quoting *United States v. Vongxay*, 594 F.3d 1111, 1118 (9th Cir. 2010)). Five years later, in *Meza-Rodriguez*, the Court of Appeals questioned whether the Second Amendment was limited to "law-abiding" citizens, but nevertheless rejected an unlawfully present noncitizen's Second Amendment challenge to a Section 922(g)(5) indictment. 798 F.3d at 669, 673. Of course, both of these cases not only preceded *Bruen*, they

also came before *Holden* and *Gay*. In *Holden*, the Seventh Circuit acknowledged the government's power to "keep firearms out of the hands of dangerous people who are apt to misuse them." 70 F.4th at 1017; *see also Atkinson*, 70 F.4th at 1023 ("[A]lthough Atkinson has shown some support for the idea that a group's 'dangerousness' is what mattered to the Founders, he does not provide much historical basis for individualized assessment or for delineating between individuals who committed violent versus non-violent crimes."). And in *Gay*, the Seventh Circuit noted that any facial invalidation of Section 922(g)(1) under the Second Amendment is "hard to square with [*Heller*]," which affirmed "that the Second Amendment creates personal rights" and "pointedly stated that 'longstanding prohibitions on the possession of firearms by felons' are valid." *Gay*, 98 F.4th at 846 (quoting *Heller*, 554 at 626, 635).

   Magistrate Judge Dries correctly concluded that Section 922(g)(3) is relevantly similar to historical firearm regulations concerning felons and the mentally ill. (ECF No. 48 at 13–16.) This conclusion is consistent with nearly every court that has considered this issue post-*Bruen*. (*See id.* at 14–15 (collecting cases)); *see also United States v. Costianes*, 673 F. Supp. 3d 756, 762–63 (D. Md. 2023) (collecting cases). Two districts within the Seventh Circuit have upheld the constitutionality of Section 922(g)(3). *See United States v. Posey*, 655 F. Supp. 3d 762 (N.D. Ind. 2023) (finding that the historical record shows a tradition of regulating firearm possession by individuals using intoxicating substances which is analogous to Section 922(g)(3) and, accordingly, holding that Section 922(g)(3) is constitutional); *Seiwert*, 2022 WL 4534605, at *2 (concluding that unlawful users of controlled substances fall outside the Second Amendment's protection because they are not law-abiding and holding that Section 922(g)(3) "is relevantly similar to regulations aimed at preventing dangerous or untrustworthy persons from possessing and using firearms, such as individuals convicted of felonies or suffering from mental illness" and therefore, constitutional).

   Although Judge Dries recognized that not every habitual drug user is dangerous, just like not every felon or mentally ill person is violent, he also observed (correctly) that the "empirical evidence shows that drug users as a group are significantly more likely to engage in violence than similarly situated individuals who do not abuse drugs." (ECF No. 48 at 14); *see also Yancey*, 621 F.3d at 686 (discussing the "[a]mple academic research confirm[ing] the connection between drug use and violent crime"). "For example, nearly four times as many adults arrested for serious crimes had used an illegal drug in the previous year than had not." *Yancey*, 621 F.3d at 686 (citing Office

of Applied Studies, Substance Abuse and Mental Health Servs. Admin., Illicit Drug Use Among Persons Arrested for Serious Crimes, NSDUH Rep. (2005)). Studies also confirm a connection between marijuana use and violence. *See United States v. Carter*, 750 F.3d 462, 467 n.7 (4th Cir. 2014) (citing Lana Harrison & Joseph Gfroerer, *The Intersection of Drug Use and Criminal Behavior: Results from the National Household Survey on Drug Abuse*, 38 Crime & Delinq. 422, 434–35 & tbl.6 (1992)). A different study found that "among probationers, individuals who had been involved in violence were more likely to have used marijuana." *Id.* at 467 (citing Carrie B. Oser et al., *The Drug-Violence Nexus Among Rural Felony Probationers*, 24 J. Interpersonal Violence 1285, 1293 tbl.1 (2009)). And another study found "that adolescents who used marijuana were almost twice as likely to engage in violence when they became young adults." *Id.* at 468 (emphasis removed) (citing Evelyn H. Wei et al., *Teasing Apart the Developmental Associations Between Alcohol and Marijuana Use and Violence*, 20 J. Contemp. Crim. Just. 166, 177–78 & tbl.3 (2004)).

   McDaniel contends that *Yancey* relied on "studies discussing the violence and danger associated with the illicit drug trade (i.e., prohibition) rather than any causal relationships between marijuana use and propensity to commit violence." (ECF No. 60 at 10.) Therefore, disarming drug users is not analogous to disarming felons or the mentally ill. (*Id.*) The Court disagrees. "[D]rugs and guns are a dangerous combination." *Smith v. United States*, 508 U.S. 223, 240 (1993). This is because "habitual drug abusers, like the mentally ill, are more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms." *Yancey*, 621 F. 3d at 685. And as noted by the government, drug users necessarily are participants in the illicit drug trade. (ECF No. 64 at 11 n.6.)

   McDaniel also contends that prohibitions on firearm possession by felons and the mentally ill are neither distinctly nor relevantly similar to prohibitions on firearms possession by unlawful drug users. (ECF No. 65 at 8–9.) As for a comparable justification, restrictions applicable to felons and the mentally ill comport with a historical principle of disarming specific groups in the interests of public safety. The Gun Control Act was enacted to disarm unlawful drug users for the sake of public safety. "The very structure of the Gun Control Act demonstrates that Congress . . . sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." *Barrett v. United States*, 423 U.S. 212, 218 (1976). Each category

of 18 U.S.C. § 922(g) "prohibits . . . presumptively dangerous persons from transporting [or possessing] or receiving firearms." *Lewis v. United States*, 445 U.S. 55, 64 (1980).

The government has met its burden that Section 922(g)(3) is "relevantly similar" to historical regulations aimed at preventing potentially dangerous persons from possessing and using firearms, such as convicted felons, the mentally ill, and intoxicated individuals. *See Posey*, 655 F. Supp. 3d at 773–74 (citing to historical statutes restricting the intoxicated from possessing guns and finding that these "historical examples, of statutes regulating firearm possession and use by individuals using intoxicating substances" support the constitutionality of Section 922(g)(3)). Disarming drug users is "a distinctly modern firearm regulation" that is "relevantly similar" to disarming felons or the mentally ill or the intoxicated. *See Bruen*, 597 U.S at 28–29. The historical record supports prohibiting a defined group from possessing arms based on a legislature's assessment the group is dangerous or untrustworthy. *Holden* reaffirmed the government's power to "keep firearms out of the hands of dangerous people who are apt to misuse them." 70 F.4th at 1017. Under the legal framework articulated in *Bruen*, the Court holds that 18 U.S.C. § 922(g)(3) is constitutional.

### III. McDaniel's Challenge to Section 922(a)(6) Fails.

Relying on his contention that Section 922(g)(3) is unconstitutional, McDaniel argues that Counts One and Four, charging him with falsely claiming on a firearm transaction form that he was not an "unlawful user" of marijuana in violation of Section 922(a)(6), must also be dismissed. He reasons that because Section 922(g)(3) is constitutionally infirm, any alleged false statement on a firearm transaction form must be immaterial. (ECF No. 32 at 2.) Since McDaniel filed his objections, the Seventh Circuit decided *Holden* and rejected the basis for his argument. 70 F.4th at 1017–18.

The defendant in *Holden*, like McDaniel, was charged with making a false statement to a licensed firearms dealer. *Id.* at 1016. Although the defendant in *Holden* was charged with lying about being under indictment, not about being an illegal drug user, he, like McDaniel, argued that the government could not prohibit him from possessing a firearm consistent with the Second Amendment, and thus his lying about that fact could not be material. *Id.* at 1017. McDaniel makes a parallel argument. He contends that the lie he is alleged to have told (that he was not a controlled substances user) was immaterial "to the lawfulness of the sale" because the statute that created the status about which he lied is unconstitutional. (*See* ECF No. 32 at 2); *Holden*, 70 F.4th at 1017.

*Holden* rejected this reasoning. As the Seventh Circuit explained, "[t]he word 'material' in § 922(a)(6) does not create a privilege to lie, when the answer is material to a statute, whether or not that statute has an independent constitutional problem." *Holden*, 70 F.4th at 1017. Therefore, lying on a firearms form is never justifiable, even if the underlying statute is later declared unconstitutional. *Id.* ("Many decisions of the Supreme Court hold that false statements may be punished even when the government is not entitled to demand answers—when, for example, compelling a truthful statement would incriminate the speaker.") (collecting cases).

The Court has already rejected McDaniel's argument that Section 922(g)(3) criminalizing gun possession by controlled substance users is constitutionally infirm under *Bruen*. His request to dismiss the false statement counts fails on that basis, and for the additional reasons outlined in *Holden*. "The power to collect accurate information is of a different character—and stands on a firmer footing—than the power to prohibit particular people from owing guns." *Id.* at 1017. "A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood." *Id.* at 1016 (quoting *Bryson v. United States*, 396 U.S. 64, 72 (1969), *reaff'd in Lachance v. Erickson*, 522 U.S. 262 (1998)). And, the Second Amendment permits "presumptively lawful regulatory measures" designed to impose reasonable "conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626–27, 627 n.26. McDaniel's motion to dismiss Counts One and Four based on the unconstitutionality of Section 922(g)(3) is denied.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Court **OVERRULES** Defendant's objections to Judge Dries's Report and Recommendation, ECF No. 60, and **ADOPTS** the Recommendation of Judge Dries, ECF No. 48.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Counts One, Two, and Four as Unconstitutional, ECF No. 32, is **DENIED**.

Dated at Milwaukee, Wisconsin on May 24, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge